# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

---

**In Re:**

JIM MITCHELL HAHAJ,

**Debtor.**

**Bankruptcy Case No. 05-41615-JDP**

---

JIM MITCHELL HAHAJ,

**Plaintiff,**

vs.

UNITED STATES DEPARTMENT OF EDUCATION aka DIRECT LOANS,

**Defendant.**

**Adv. Proceeding No. 08-06084**

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Jim Hahaj, Boise, Idaho, Pro Se Plaintiff.

Amy Howe, Assistant United States Attorney, Boise, Idaho, Attorney for Defendant.

MEMORANDUM OF DECISION - 1

**Introduction**

Acting *pro se*, Plaintiff Jim Mitchell Hahaj commenced this adversary proceeding against Defendant United States Department of Education, aka Direct Loans on October 21, 2008, seeking declaratory and injunctive relief. Docket No. 1. Pending before the Court are Defendant's Motion for Summary Judgment, Docket No. 32, and Plaintiff's Amended Counter Motion for Summary Judgment. Docket No. 35.[1] The Court conducted a telephonic hearing concerning these motions on November 16, 2009, at the conclusion of which it deemed the issues under advisement. This memorandum disposes of the motions. Fed. R. Bankr. P. 7052, 9014.[2]

**Facts**

---

[1] On September 28, 2009, Plaintiff first filed a "Response to Defendant's Motion for Summary Judgment and Counter Motion for Summary Judgment for Plaintiff." Docket No. 34. Then, on November 6, 2009, Plaintiff filed his amended motion for summary judgment, to which Defendant has responded. *See* Docket No. 36.

[2] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

MEMORANDUM OF DECISION - 2

Between 1989 and 1995, Plaintiff and his former spouse, Michele Hahaj, obtained seven student loans to pay for their educational expenses. In September 1997, Plaintiff consolidated the loans through Defendant's Direct Loan consolidation program. Thereafter, Plaintiff made regular payments on the consolidated loan until he was incarcerated in August, 2001.[3] On May 15, 2002, Plaintiff and his former spouse divorced. In the divorce decree, Plaintiff was ordered by the state court to assume sole responsibility for the student loan obligation. Docket No. 1, Ex. A.

At some point following Plaintiff's incarceration, Defendant declared Plaintiff's loan to be in default as a result of Plaintiff's failure to make payments. In January 2004, Plaintiff attempted to negotiate with Defendant, and offered to make monthly payments of five dollars for a period of twelve months in exchange for Defendant removing his account from default status. Plaintiff made these monthly payments until May, 2004, when Defendant informed Plaintiff that the payments were too small

---

[3] Plaintiff is serving a fifteen-year prison sentence for aggravated battery which is scheduled to conclude on September 27, 2016. Although he has been denied parole once, a second parole hearing is scheduled for September, 2010.

MEMORANDUM OF DECISION - 3

to warrant renegotiation of the loan.  Plaintiff then discontinued making these payments.

On July 22, 2005, Plaintiff filed a petition for relief under chapter 7 of the Bankruptcy Code.  In his bankruptcy schedules, Plaintiff listed only $1.86 in assets, consisting of the cash in his inmate trust account, and $70,013.83 in consumer debt, including the consolidated student loan obligation.  *See* Bk. Docket No. 1.[4]  A discharge in Plaintiff's favor was entered in the bankruptcy case on October 18, 2005, and the case was closed on November 7, 2005.  *See* Bk. Docket Nos. 8 and 10.

Three years later, on October 21, 2008, Plaintiff filed the instant action against Defendant seeking declaratory and injunctive relief.[5]  Docket No. 1.  In his Complaint, Plaintiff alleged that he was entitled to a "financial hardship exemption" [sic] under 11 U.S.C. § 523(a)(8).  *Id*.

---

[4]  To avoid confusion, references to the docket in this adversary proceeding are designated simply as "Docket No."  Docket entries in the underlying bankruptcy case are designated "Bk. Docket No."

[5]  Plaintiff has not sought to reopen his bankruptcy case, which remains closed at this time.

MEMORANDUM OF DECISION - 4

Plaintiff further alleged that his student loans were listed in his bankruptcy schedules, and that the loans were discharged along with his other debts. *Id*. at ¶ 7. Plaintiff requested a declaratory judgment that the student loans were discharged and an injunction prohibiting Defendant from further collection activities on Plaintiff's account. *Id*.

## Discussion

### I.

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)[6], incorporated by Fed. R. Bankr. P. 7056; *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81, 03.4 I.B.C.R. 213, 215 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).

---

[6] This rule was recently amended, with the changes becoming effective on December 1, 2009. The standard outlined above is now found at Fed. R. Civ. P. 56(c)(2). There were other changes to the rule, apart from renumbering subsection (c), which do not affect this proceeding.

MEMORANDUM OF DECISION - 5

The Court does not weigh evidence in resolving summary judgment motions but, rather, determines only whether a material factual dispute remains for trial. *Leimbach*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party. A fact is "material" if it might affect the outcome of the case. *Id.* (citing *Far Out Prods.*, 247 F.3d at 992).

The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.)*, 255 B.R. 588, 597 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

"It is well-settled in this circuit and others that the filing of cross-motions for summary judgment, both parties asserting that there are no

MEMORANDUM OF DECISION - 6

uncontested issues of material fact, does not vitiate the court's responsibility to determine whether disputed issues of material fact are present." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "[C]ross-motions for summary judgment must be considered separately and do not relieve the court of its responsibility to determine the appropriateness of a summary disposition." *Schaefer v. Deppe (In re Deppe)*, 217 B.R. 253, 259 (Bankr. D. Minn. 1998); *ACLU of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003) ("we evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences.")

II.

The material facts are not in dispute. The parties disagree, however, over the interpretation of the discharge Plaintiff received in his bankruptcy case in 2005. Plaintiff argues that his student loan obligations were discharged in his earlier chapter 7 case; Defendant argues to the contrary. Whether the loans were discharged is a legal question, which can be determined on summary judgment. *Educ. Credit Mgmt. Corp. v. Howe (In re*

MEMORANDUM OF DECISION - 7

*Howe)*, 319 B.R. 886, 888 (9th Cir. B.A.P. 2005).

In general, educational loans made, insured, or guaranteed by the government are not discharged in bankruptcy "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). This provision is "self-executing." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) (additional citations omitted). "Unless the debtor affirmatively secures a hardship determination, the discharge order will not include a student loan debt." *Id.*

In this case, Defendant did not object to entry of a discharge in Plaintiff's case, and so, as commanded in § 727(a) and Rule 4004(c), a discharge was entered. However, because Plaintiff did not affirmatively secure a hardship determination, his student loan debt to Defendant was not discharged by the October 18, 2005 discharge order. *See* § 727(b) (providing that a discharge applies to all of the debtor's prepetition debts "[e]xcept as provided in section 523 of [title 11]."). In this adversary proceeding, Plaintiff now seeks a determination that excepting his student

MEMORANDUM OF DECISION - 8

loans from discharge will result in an undue hardship.

Although the term "undue hardship" is not defined in the Bankruptcy Code, the Ninth Circuit has recognized that "[t]he existence of the adjective "undue" indicates that Congress viewed garden-variety hardship as insufficient excuse for a discharge of student loans . . . ." *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1111 (9th Cir. 1998) (quoting *Brunner v. New York State Higher Educ. Servs. Corp. (In re Brunner)*, 46 B.R. 752, 753 (Bankr. S.D.N.Y. 1985), *aff'd*, 831 F.2d 395 (2d Cir. 1987)). To determine if excepting student loan debt from discharge will impose an undue hardship, the Ninth Circuit has adopted the three-part test first enunciated in *In re Brunner*, 831 F.2d at 396. *See In re Pena*, 155 F.3d at 1112 (adopting the *Brunner* test). Under the *Brunner* test, to discharge a student loan debt, the debtor must prove that: (1) he cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if required to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) the debtor

MEMORANDUM OF DECISION - 9

has made good faith efforts to repay the loans. *Educ. Credit Mgmt. Corp. v. Mason (In re Mason)*, 464 F.3d 878, 882 (9th Cir. 2006); *In re Brunner*, 831 F.2d at 396.

The debtor bears the burden of proving all three elements in order to obtain a discharge of an educational debt. *Rifino v. United States (In re Rifino)*, 245 F.3d 1083, 1087-88 (9th Cir. 2001); *United Student Aid Funds, Inc. v. Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir. B.A.P. 1999); *Ritchie v. Nw. Educ. Loan Ass'n. (In re Ritchie)*, 254 B.R. 913, 917 (Bankr. D. Idaho 2000). Although the standard to obtain a discharge of student loans is high, it is not unattainable. *See Pa. Higher Educ. Assistance Agency v. Birrane (In re Birrane)*, 287 B.R. 490, 495 (9th Cir. B.A.P. 2002) ("In defining undue hardship, courts require more than temporary financial adversity but typically stop short of utter hopelessness.")

### III.

Defendant argues that, as a matter of law, Plaintiff cannot satisfy the *Brunner* test for undue hardship. Defendant concentrates its argument on the third prong of that test, requiring that a debtor demonstrate good faith

MEMORANDUM OF DECISION - 10

efforts to repay the loan.  Defendant argues that, given these facts, Plaintiff's financial circumstances are of his own making, and that the forces preventing his repayment of the student loans were not truly beyond his reasonable control.  According to Defendant's argument, because Plaintiff is incarcerated for a felony, he has wilfully made his financial circumstances worse, and may not therefore avail himself of equitable principles to discharge his obligations.

      Plaintiff, of course, disagrees with Defendant's interpretation of the *Brunner* test, arguing that each of the elements *will be* satisfied upon his eventual release from prison.  Plaintiff argues that his earning potential has been greatly reduced due to his criminal conviction and incarceration.  Moreover, he argues that the required estimated monthly payment of $400 on his student loans will create an undue financial hardship for him, considering that his child support obligations and basic living expenses will exhaust his entire expected income.  In addition, Plaintiff argues that his status as a convicted felon and the default status of his student loan ensure that his bleak financial condition will endure for the duration of the

MEMORANDUM OF DECISION - 11

loan's repayment period. And lastly, Plaintiff argues that his payments prior to incarceration and the monthly payments of five dollars during his prison sentence demonstrate his good faith efforts to repay the loan.

IV.

While a debtor must prove that each of the three prongs in the *Brunner* test are satisfied in order to receive a discharge of student loan debt, in this case, the Court need look no further than the first prong. Although Plaintiff's attempt to predict his financial circumstances upon his release from prison *may* be accurate, it is irrelevant in the *Brunner* analysis. The first prong of the *Brunner* test focuses on the student loan debtor's financial situation at the time of trial. *In re Pena*, 155 F.3d at 1112. "[A] determination of income for § 523(a)(8) purposes must be based on *current* income." *In re Pena*, 155 F.3d at 1111 (emphasis added); *Twitchell v. Educ. Credit Mgmt. Corp. (In re Twitchell)*, 04.2 I.B.C.R. 66, 67 (Bankr. D. Idaho 2004). Likewise, a debtor's expenses are examined as they currently exist. *In re Pena*, 155 F.3d at 1111. Accordingly, the Court need not speculate about Plaintiff's future employment or expenses following his

MEMORANDUM OF DECISION - 12

release from incarceration. Likewise, what Plaintiff expects as a standard of living in the future is of no moment. Instead, as the § 523(a)(8) case law instructs, the Court must consider Plaintiff's standard of living as it currently exists, based on current income and expenses.

Although Plaintiff is currently working in the prison's furniture shop, he has no present income.[7] But, at present, Plaintiff does not have actual living expenses either. His meals, clothing, shelter, and basic medical needs are provided by the State of Idaho. Plaintiff conceded that while he is incarcerated, his student loans (and the fact that they remain in default) do not impact him adversely. In other words, while incarcerated, Plaintiff is not prevented from maintaining an adequate, although fairly Spartan, standard of living, despite a lack of income. Because the first prong of the *Brunner* test requires the Court to consider a debtor's present situation, the Court concludes that Plaintiff cannot satisfy this prong at this time. *See Looper v. United States Dep't of Educ.*, 2007 WL 1231700, at *6

---

[7] Plaintiff did note that he may become eligible for a work release program at some point in the future. However, again, such a prospect is speculative at this point.

MEMORANDUM OF DECISION - 13

(Bankr. E.D. Tenn., April 25, 2007) (concluding that an inmate, who did have minimal income, was unable to satisfy the first prong of the *Brunner* test because his basic expenses were provided by the state of Tennessee).[8]

## Conclusion

The discharge entered in Plaintiff's bankruptcy case did not operate to discharge his student loan debt to Defendant. Moreover, Plaintiff can not show that, at this time, excepting his student loan obligation from discharge will result in an undue hardship. Accordingly, Plaintiff is not entitled to discharge his student loan.[9]

Defendant's Motion for Summary Judgment, Docket No. 32, will be granted; Plaintiff's Amended Counter Motion for Summary Judgment, Docket No. 35, will be denied. A separate order will be entered. Counsel

---

[8] The Ninth Circuit Bankruptcy Appellate Panel has explained, "if one of the elements of the three part 'undue hardship' test is not proven, the inquiry must end and the student loan cannot be discharged." *In re Birrane*, 287 B.R. at 499. Because the first prong of the *Brunner* test is not met in this case, the Court need not consider the remaining two prongs.

[9] The Court makes no findings or conclusions regarding whether Plaintiff may renew his attempt to seek an undue hardship discharge of the student loan if his circumstances change following his release from prison.

MEMORANDUM OF DECISION - 14

for Defendant may submit an appropriate form of judgment for entry by the Court.

Dated: December 9, 2009

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge